No. 21          December 3, 2015          201

IN THE OREGON TAX COURT
REGULAR DIVISION

Barbara ELLISON,
*Plaintiff,*

*v.*

CLACKAMAS COUNTY ASSESSOR
and Department of Revenue,
*Defendants.*

(TC 5177)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the real market value (RMV) of her high-end equestrian facility and adjacent residence. Taxpayer requested a value below that determined by BOPTA. Defendants submitted a counterclaim that requested a value considerably higher than that determined by BOPTA. Appraisers for both parties relied on the cost indicator of value. The court found that taxpayer had not borne her burden of proof that the value placed on the property as of the assessment date was lower than that found by BOPTA. Nor had Defendants borne their burden on the counterclaim value, with a result that the court found the RMV to be that established by BOPTA.

Trial was held March 3 through 5, 2014, in the courtroom of the Oregon Tax Court, Salem.

Jack L. Orchard, Jr., Ball Janik LLP, Portland, argued the cause for Plaintiff (taxpayer).

Kathleen J. Rastetter, Clackamas County Assistant County Counsel, Oregon City, argued the cause for Defendant Clackamas County Assessor (the county).

Dan Paul, Assistant Attorney General, Department of Justice, Salem, filed a brief for Defendant Department of Revenue (the department).

Decision rendered December 3, 2015.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This property tax case presents the question of the real market value (RMV) of land and improvements (the property) which together comprise a high-end horse breeding and training property, together with associated

residence, located near Wilsonville, Oregon. The valuation date was January 1, 2011.

Following a determination of RMV and exception maximum assessed value (MAV) for the property by the Clackamas County Board of Tax Appeals (BOPTA), Plaintiff (taxpayer) appealed the orders of BOPTA to this court. Following a decision by the Magistrate Division, taxpayer appealed to this division of the court. Taxpayer withdrew her appeal as to certain accounts, leaving only accounts 00816941 and 00817012 at issue.

Defendants Department of Revenue and Clackamas County Assessor (the department and the county) filed counterclaims.[1] Taxpayer bears the burden of proof as to any value less than that found by BOPTA. The department and county bear the burden of proof as to any value in excess of that found by BOPTA. ORS 305.427.

## II.   FACTS

The property in question is part of a high-end horse breeding and training facility. The property includes a large well-appointed residence house, worker housing, barns, arenas and other facilities typical of such operations. A detailed description of the assets is not necessary for purposes of this opinion.

The appraisal experts for all parties agreed to value the assets at issue as a group. The appraisal experts arrived at virtually identical RMV amounts for the land in question.

As to the RMV amounts for improvements, the appraisers differed as to the basic standard of valuation. The appraiser for Defendants took the view that the provisions of ORS 308.205(2)(c) applied, arguing that the property had no immediate market value as of the valuation

---

[1] In referring to "counterclaims" the court is making a generic reference to a position that the RMV of the property is greater than that found by BOPTA. Such an assertion can affect the proceedings in this court even if they are not, strictly speaking, counterclaims. This court has concluded that counterclaims, as such, have no statutory validity in this court. *Village at Main Street Phase II, LLC II v. Dept. of Rev.*, 22 OTR 52 (2015). However, even without use of a counterclaim, a party can request that the court reach a proper value above or below that determined in prior proceedings. *See* ORS 305.412 (jurisdiction of court to find correct value, regardless of positions contained in pleading of the parties).

date and that its RMV was therefore an amount that would justly compensate taxpayer for the loss of the property. The appraiser concluded that the actual costs incurred by taxpayer in constructing the property were the measure of just compensation.

The appraiser for taxpayer asserted that the property did have an immediate market value. Although the appraiser considered evidence as to a comparable sales indicator of value, his conclusion as to RMV was based upon the cost approach. In considering the cost approach, the appraiser concluded that there was some physical depreciation to be deducted from replacement cost new. Most importantly, the appraiser for taxpayer concluded that a significant deduction was required in respect of economic obsolescence, some fifty percent in amount.

## III.   ISSUE

The sole issue in this case is the RMV for the property in question as of January 1, 2011.

## IV.   ANALYSIS

At the hearing on this matter, the court raised the question as to whether the provisions of ORS 308.205(2)(c) are consistent with the constitutional definition of RMV found in Article XI, section 11, of the Oregon Constitution, which provides:

> "The real market value of property shall be the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year, as established by law."[2]

The department argues that the statutory provision in ORS 308.205(2)(c) is not in conflict with the constitutional definition. In making that argument the department points to its administrative rule in OAR 150-308.205-(A)(3) which specifies that:

> "Because a general market for the property does not exist, the property has no apparent immediate market value.

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

Real market value must be determined by estimating just compensation for loss to the owner of the unit of property through either the cost or income approaches, whichever is applicable, or a combination of both."

In this case, neither taxpayer nor Defendants assert that the comparable sales indicator of value should be relied upon to determine RMV. Neither does either party rely on the income indicator of value. That being the case, all parties rely on the cost indicator. It follows that this case presents no occasion to analyze further the question presented by the court. This case can be resolved based on the strength of the case made by the two appraisers.

That said, the strength of each appraiser's case must be separately analyzed. As to taxpayer's claim for a RMV of $8,800,000, the question is whether taxpayer has demonstrated more probably than not, that the value of the property was as asserted.

However, as to the counterclaim of Defendants that the value of the property in question is $19,815,225, the question is whether Defendants have demonstrated, more probably than not, that the value of the property was as asserted by the Defendants.

As to taxpayer's case for a value below that found by BOPTA, that case depends upon the persuasiveness of her appraiser's conclusion as to replacement cost new, his conclusion as to physical depreciation and, most importantly, his conclusion as to economic or external obsolescence.

Defendants challenged the conclusion of taxpayer's appraiser as to his starting cost number, noting that it was approximately $4 million less than actual construction costs and also approximately the same amount below his calculation of cost using the Marshall & Swift cost factors. The appraiser did not give a persuasive explanation of these differences.

As to physical depreciation, taxpayer's appraiser took not insignificant subtractions from initial cost even though the properties in question were essentially new. The explanation given by the appraiser was that these properties, like new cars, experience immediate depreciation once

any use occurs. That explanation seems at odds with the age life method the appraiser purportedly used. Again the approach of the appraiser is not persuasive.

The most important adjustment to initial cost made by taxpayer's expert was in respect of economic obsolescence. As to this adjustment the appraiser relied upon work and analysis done by other appraisers in other regions of the county as to horse properties and upon other more local appraisers as to obsolescence affecting the residence. None of these appraisers testified or were available for cross-examination. In addition, except for a summary writing prepared by one of these appraisers, very little narrative explanation was given as to what the appraisers had done. Based on this work by others, taxpayer's expert established a range of economic obsolescence levels and chose one in the middle of the range.

The court acknowledges the experience of taxpayer's appraiser with respect to agricultural properties in general and horse properties in particular. The court has no difficulty accepting the general conclusion reached by taxpayer's appraiser—that external or economic obsolescence affected the property in question in more than insignificant amounts. His testimony about the depressed state of the national market for horse properties as of the appraisal date supports the general conclusion.

However, the court can give no more than limited weight to the evidence presented by taxpayer on this point in determining what specific amount of economic obsolescence was experienced by the property in question. It rests on the work of persons who gave no persuasive written discussions of their work and the conclusions that followed and were not available to be tested by cross-examination. In addition, other than accepting the appraiser's judgment alone, there appeared to be little reason for arriving at the ultimate obsolescence level ultimately chosen.

The court concludes that taxpayer has not borne her burden of proof that the value placed on the property as of the assessment date was lower than that found by BOPTA. Taxpayer's claim on appeal is not established.

As to the counterclaim of Defendants, the same conclusion exists. The appraiser for Defendants lacked any experience in appraising the types of property at issue. The appraiser made very limited inquiry into the state of the market for properties of this type. This failure may have been due to his view (which the court finds unsupported) that the only market into which he could inquire was the local market. The evidence presented by taxpayer establishes without question that horse properties of the type involved here are bought and sold in a national market.

The appraiser for Defendants simply concluded that just compensation for taxpayer would be a complete refund of all costs incurred in bringing the property into existence. Throughout his report and testimony, the appraiser for Defendants repeatedly indicated a profound inability to distinguish between value in use and market value. This may well have been a product of the belief of this appraiser that this property was "especial" property. The acceptance by Defendants' witness of a premise that cost is equivalent to value ignores taxpayer's persuasive evidence that external obsolescence of a not insignificant amount affected this property.

The court places no reliance upon the conclusions of the witness for the Defendants. Accordingly, they are not entitled to prevail on their counterclaim.

## V.   CONCLUSION

The parties have been unsuccessful in bearing their respective burdens of proof. This is not a case where the court is able to rely on the conclusions of either appraiser as to some components of the analysis, making adjustments to component parts of an analysis on which the court cannot rely.

On this record, the court is not in a position to reach a conclusion of value for the property at some point between the values asserted by the parties. Now, therefore,

IT IS THE OPINION OF THIS COURT that the RMV of the property at issue is as found by BOPTA.